Your argument next in case 10-895, Gonzales v. Thaler. Ms. Millett. Mr. Chief Justice, and may it please the Court, the Court of Appeals in this case had jurisdiction to adjudicate the appeal, but in doing so, it decided the case wrongly. Mr. Gonzales' petition for habeas corpus was timely because it was filed within a year of the conclusion of direct appellate proceedings in the state court. And at the end, within a year of that court's ending of his appeal process. With respect to jurisdiction, jurisdiction existed because a certificate of appealability was issued. It rested upon a substantial showing of the denial of a constitutional right. To be sure, the judge in issuing that certificate did not identify the substantial constitutional question required by 2253c3. That is a requirement. It is mandatory, but it is not jurisdictional. Roberts, What if he had identified a constitutional issue, a speedy trial issue? Does that give the Court the authority to consider a different constitutional issue, a Fourth Amendment issue? Ms. Millett Yes, it does. Once the — this is a gatekeeping function to identify which case — which appeals should go forward and claim the attention of the Court with the text of the statute. And 22 — that's on page — excuse me — page 3A of the appendix to the blue brief. It provides that an appeal may not go forward, and if a certificate is issued, appeal may go forward. The operative language here in C-1 is that this is about an appeal going forward. So once the certificate identifies issues, the appeal goes forward. It's much like 1292b, where certification of questions comes to an appellate court and they decide whether to take interlocutory review. Once they do, they're not bound to just those questions. The entire order comes up for review. Roberts, So what if it identifies something that is not remotely a Federal constitutional issue? By the terms of the COA, it's quite clear, you know, whether it's a State law issue or something else. There's no constitutional plausibility on the face of it. Does that still work for you? It works in the sense that it's not a jurisdictional bar to going forward. It is a violation of C-3. If timely raised by the State, then it can either be dismissed or revisited by the original judge, an appeal from the author. How do you decide whether it's a jurisdictional bar? You acknowledge that the issuance by a judge of a certificate of appealability is a jurisdictional step, right? That is jurisdictional. If he doesn't do that, there's no jurisdiction. Because this Court held in Milgrove. Okay. So the issue is whether C-3, which says the certificate of appealability shall indicate which specific issue or issues satisfy the showing required, whether that provision is a requirement for the validity of the certificate of appealability. If it is, then there's no jurisdiction because the certificate of appealability is invalid. Isn't that right? I don't agree that the so-called content validity of a document that is post hoc certifying a gatekeeping requirement is itself jurisdictional. It's because there is a requirement. Let's take the Fourth Amendment, I mean, which says, No warrant shall issue but upon probable cause. Okay. So, but then it goes on, Supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. Is the warrant valid if, indeed, it does not meet those requirements of being supported by oath or affirmation, and particularly describing the? No, a warrant may well not be valid if it doesn't meet those requirements. It won't be valid. It will just be in the statute. The certificate of appealability is invalid as a matter of law here. It's an incorrect action by the Court. That doesn't make it jurisdictional. Just warrants aren't jurisdictional either in that sense. Just to take a kind of nutty example, Ms. Millett, suppose that a judge took a blank piece of paper and typed the words certificate of appealability on top and issued it. Still jurisdiction to take the appeal? Still jurisdiction to take the appeal. Of course, one would expect, one would expect either the court of appeals judges or the State, both of which have every incentive to check on these things, to raise the issue. But the question is, when something happens. So what counts as a certificate of appealability is, I guess, the question? All you need is those three words, and then you have a certificate of appealability such that jurisdiction attaches? Well, I think there's more to it. I mean, it's not issued by the clerk's office, right? The statute requires a judge to do this, a Federal judge, so a circuit judge or justice, circuit justice, to issue this. And these are officials who are sworn to uphold the law and the Constitution. And when they do this, when they make these determinations, they aren't handing these out like candy. They're deciding that their court, their colleagues, maybe themselves, should invest resources in this process. So the fact that a certificate is issued is not simply a piece of paper coming out. I think it is fair to presume that it is a deliberate determination by the law firm. Ginsburg. Ms. Millett, suppose instead of having the statute broken down into C-1, 2, and 3, Congress had written C as just one paragraph that says, you must have a certificate of appealability, and this is what the certificate must contain. No division into 2 and 3. Would you still maintain that only the first sentence of the paragraph is jurisdictional and the rest is not? Well, my position would be harder for precisely the reason you phrased, and as Justice Scalia was asking, how do we tell? These are jobs of statutory construction. And the fact that Congress broke these two steps out and broke C-3 out by itself, and there is a noticeable turn in the language by the time you get to C-3. C-1 says no appeal shall be taken. That sounds jurisdictional. C-3 says a document shall indicate issues after the fact. The important thing to understand here is that you not only have the language shifting materially, but your starting presumption, the starting presumption here is that we need clear direction from Congress before we decide that something is jurisdictional. And this Court has faced language far more emphatic than C-3. For example, in the end, it's not just a question of whether or not it's jurisdictional or not. Alitoson Suppose a Petitioner asks for a certificate of appealability on 10 issues and the circuit judge says, I'm granting it on issue 1, I'm denying it on issue 2 through 9, 2 through 10. Is there jurisdiction to consider 2 through 10? There is jurisdiction to consider. It's obviously within the discretion of the Court. They could also determine not to. And I say that again because the language of the Court is different. Alitoson In that situation, then, if the State moves to dismiss the arguments that are made by Petitioner on issues 2 through 10, would the panel be obligated to do that? No, it would not be obligated to because what C-1 says is this determines when an appeal comes forward, the whole appeal comes forward. Alitoson It could do that without issuing a new certificate, without issuing a certificate of appealability, without saying, we think that the judge who issued the certificate of appealability was incorrect, the jurists of reason could disagree on issues 2 through 10? Kagan Well, I think whether you have to the panel would then have to do the paperwork of doing a new certificate of appealability or just in its own decision in the course of its ruling explain that we've decided to reach these is not, I don't think, of jurisdictional significance, which way they apply. Scalia It seems to me you beg the question when you say that the issue is whether the appeal will go forward. That's precisely what the issue is here, whether it is that the appeal will go forward or whether an appeal on an identified issue will go forward. That's exactly what we're talking about. Kagan Well, it's a statutory construction. Scalia And it seems that the structure of the statute wants an appeal to go forward on a particular issue and not in general on who knows how many issues. Kagan Well, Justice Scalia, with respect, that's not what the statute says. Congress could have written the statute that way, but I think it would be extraordinary to tell courts that an appeal comes forward, but we're only going to allow you to look at this precise issue cited by one judge. Scalia It says it doesn't come forward unless there is a certificate of appealability. Kagan Yes. Scalia And then it says the certificate of appealability shall indicate which specific issues or issues satisfy the showing required. Kagan But in no way are we going to have an appeal. Scalia I read that as saying we're going to have an appeal, but just an appeal on the issue that's identified. Kagan First of all, I mean, courts can certainly do that as a matter of discretion, but whether there is an appeal. Ginsburg That would exclude this case, wouldn't it? Because there is a constitutional issue, it's a speedy trial issue, but that issue was not reached below because the case was dismissed as untimely. So the only constitutional issue that's in the case is one that couldn't be adjudicated by the court of appeals, isn't that right? Is there another constitutional issue other than the speedy trial issue? Kagan There are other issues that were raised. I think for our purposes, the strongest one that was most clearly substantial was the speedy trial one, and that's the one that we identified. Ginsburg It's a little odd that you would identify that issue for the court of appeals when the court of appeals couldn't take it up because it wasn't reached below, because the case was dismissed at an earlier stage. Kagan Well, I think, Justice Ginsburg, your question actually captures why these mistakes happen by court of appeals judges. The court of appeals judge presumably, and again, I'm just presuming here, this Court has seen this mistake happen before. And I think what the judge looked at this, didn't make a determination there wasn't a substantial constitutional question, had to know that that was there. But for the court of appeals purposes, they're just going to sort out this procedural question. And if it's timely, they're not going to address speedy trial in the first instance. That would go back to the district court. So that's one of the reasons, I think, just as a practical matter, why this mistake happens sometimes in this certificate of appealability process. But the fundamental question here is one of statutory construction. Did Congress make clear, clear at the level we require for jurisdiction, clear at the level we would require for holding, and I've never seen this anywhere in this Court's precedent, holding that an individual pro se prisoner who does everything reasonably possible, fully and timely complies with all obligations, will still have his right to first habeas on a substantial constitutional claim, irretrievably jurisdictionally foreclosed because the court of appeals judge miswrote a certificate documenting a judgment that the officer made? Kennedy, can you make the argument, does it help you in distinguishing the notice of appeals section, to say that the notice of appeal has to say the judgment or order that's being appealed. That's almost clerical. It doesn't require any discretion on the part of the judge or extensive review of the record, whereas in the COA, there has to be an element of judgment in deciding what the constitutional issue is. Does that help you distinguish the two? You rely on the fact that the notice of appeals cases were decided before our case indicating that it has to be clear language. I think certainly that there's that point. I think what's important to recognize is there's actually a similarity between this Court's notice of appeal cases. Something like Houston v. Lack, the prison mailbox rule. You have a specific textual jurisdictional requirement in the set, in the rules that require filing a notice of appeal with the clerk of the district court. And this Court said, look, when it comes to prisoners who've done everything humanly possible within their control to meet the jurisdictional requirements, we are not going to interpret these rules. This is part of the presumption. We don't interpret rules to strip away jurisdiction from individuals who have done everything humanly possible, particularly when the facts on the ground are that the statute was satisfied. The facts here are that it was met, and there's every reason to think that Judge Garza made that determination, but didn't want to go into the speedy trial. Scalia You've done everything humanly possible, and just because of the mistake of a district judge, it can't go forward. But that happens. What if the district judge does — makes a mistake and he thinks that there has not been a substantial showing of the denial of a constitutional right? He makes a mistake about that. What happens? That can be appealed. Scalia The same — the same terrible result? That can be appealed. There are processes for attempting to appeal single-judge orders within every court of appeals. They have rules for that. The difficulty here is that you have a pro se prisoner who thought he won. He got something that's hard to get from a court of appeals judge, and that's a certificate of appealability. And he did it by providing documentation of a substantial speedy trial claim, a speedy between indictment and trial, and then conviction on nothing but eyewitness testimony. He documented that for the Court, did everything he could. And it isn't until this Court that the State says, hang on, there was never any jurisdiction over this whole case. They didn't tell the court of appeals judges that. They didn't say anything until the case came to this Court. And that's not the problem. Alito But is it necessary for you to go — is it necessary for you to go as far as you seem to be going? Would it be possible to read C-3 as mandatory but not jurisdictional? So that if — well, I understood what you — your argument to be that it doesn't even have any effect, that so long as there's any document that's called a certificate of appealability, then anything can be considered by the court of appeals panel without the issuance of a certificate of appealability covering the issue. But if it's mandatory but not jurisdictional, then if the State moves, or maybe if the court, if the panel, sua sponte, identifies the fact that there may be an error, there's an opportunity for a new certificate of appealability. If nothing is done, then — then the — there isn't a problem. It's not a jurisdictional issue that lingers forever. No, I — I'm sorry if I misspoke. I absolutely agree that it's mandatory and, if timely raised, must be dealt with. I think it's an open question whether, if it's not raised until you're actually before the panel, whether the panel then has to identify one of its judges to issue a certificate or can simply, in the course of its opinion, say, we've determined that this should go forward, even though the initial — you know, whether you have to go through a formal amendment process or you just do that as part of your decision, I think either one will accomplish the same result and will comply with the statute's functional gatekeeping requirement. But the separate question, which your question — your comment leads to, is that, in looking at this, would Congress have wanted this gatekeeping function to be subject to perpetual review and revision, obligatory perpetual review by the panel? You couldn't accept that your colleague found that there was a substantial question. All three judges would, again, have to revisit that and determine that it's substantial. This was set up as a gatekeeping requirement, and it was meant to be a — in a promotion of efficiency, not to cause more work, not to cause more paperwork, to sift out cases, identify the appeals that merit the time and resources of the Court. And once that's identified, the more efficient process is not to make the certificate of appeality a whole sideshow, a whole other layer of processing, ping-ponging cases back and forth between this Court, courts of appeals, courts of appeals, single judges. We simply — we look at this and we determine that a judgment was made by a judicial officer sworn to uphold the law, a substantial showing was made, and the fact that it wasn't written down as the statute likes is a problem. It should have been raised, but it wasn't raised in the paternal opening. Scalia. Mr. Lett, as I understand the State, the State is not contending that C-2 is jurisdiction. So you're arguing against a position they haven't taken. They don't say that there is no jurisdiction if, in fact, there has been no substantial showing, so that the court of appeals has to review that. They're just saying that C-3, which describes the content of the certificate of appealability, is in effect jurisdiction. So I think you're exaggerating the consequence of what the State is urging us to hold here. Well, I think this — my point is that a substantial showing was made, so this Court doesn't even have to determine the status of C-2. All right. The State wouldn't go into that there. Counsel, before your time expires, I'd like to ask one question on the merits. In Jimenez, we held that the most natural reading of 2244d1a is to read it like we read 2255. And we read 2255 to say that finality is reached when direct review and direct review concludes when the court affirms a conviction or denies a petition, or if the defendant foregoes direct review when the time for seeking such review expires. Isn't that what the Fifth Circuit did with 2244? It read it exactly the way we read it in Jimenez? No, but I think in Jimenez, we're happy to take the language of Jimenez, which is true. I know, but you're not taking a tolling. I'm sorry? You take language from it, but I read Jimenez to say that the Court should be reading this alternative or language in exactly the way the Fifth Circuit did. This Court said in Jimenez that the, quote, and I'm quoting here, the language points to the conclusion of direct appellate proceedings in State court, end quote, as a moment of finality. And that is the test that we're asking for, the conclusion of direct appellate proceedings in State court in Texas as the issuance of the mandate. Clay and Jimenez together, our point is that it's an either or. If you do direct review, you do it from the time that it's final. That it concludes. Or if you foregone direct review when the time for seeking review expires. And two responses to that. First of, that simply begs the question that we're presenting in this case of when the direct review ended. That's our argument in the case, that that prong, when did that direct review prong end? And the second aspect of this is to understand what happened in Jimenez. The whole argument there was that you've got to, by the State, was your only, you had stopped at the Intermediate Court of Appeals as well. And the State's argument was you stopped at the Intermediate Court of Appeals originally, so you're only in the expiration of review prong. And this, but then he went back four years later, I think it was, and got the court to reopen. Started, had a whole new direct review process going on. And this Court said, rejected the argument that because he didn't go to the intermediate court, we don't look at the direct review prong. We only look at expiration of review prong. We don't look at that. We stop and we look to see is the State done. And whichever of those two prongs you're in, it may depend on what time the question is asked, whichever prong you are in, the last of those will determine when your judgment becomes final. Kagan, let's take a look at the text of 2244D1. It says, the limitation, shall run from the latest of, and then it gives four dates, essentially, four sections, each of which produces a date, A, B, C, and D. And A is the one that's concerned here. And A says the date on which the judgment becomes final, and then it gives two ways by which a judgment can become final. And the two ways are basically you lose or you quit, right? You lose or you abandon your process. So I just don't understand your argument, quite honestly, because it seems to me that A says the date, a single date, on which the judgment becomes final. When is that going to happen? Well, for some people it's going to happen when they lose, and for other people it's going to happen when they quit. First of all, the language forks out again. And so it says the date on which the judgment becomes final, and then there's the two options for finality. Right. Two ways for it to become final. They lose or they quit. So, and the question in this case is how do we know when that direct review process, what you're calling the lose prong, ends? And it's when the State says it's done, because the point of this is not an exhaustion prong. The point of 2244 and D-1 in particular, but 2244-D generally, is to say, as this Court talked about in plaint, is the State done? This supports federalism. Ex parte Johnson, the case that we cite, footnote 2 says, until the mandate issues, the appeal continues. And so the notion that it's done is not true. Kagan in Section A that there's ever going to be a conflict between these two ways of a judgment becoming final. There's no suggestion that one is going to have to pick between them. Subsection A is most naturally read. Again, it says the date. As there's just going to be one date and some people, the date of finality is going to be, you know, it becomes final because they lose. Other people, it becomes final because they quit. But subsection A suggests a single date, not two dates which you then have to choose between. The other one, I don't think the text compels that one way or the other. It says when does it become final, and so let's ask the questions. When did direct review conclude? Ginsburg's It does suggest, Ms. Millett, that final, two ways. The conclusion of direct review is you've gone up the ladder and that's it. And the second part is, well, if you don't go up the ladder, you just stop. Then, when your time to go up the ladder has ended, that's it. It seems that there are those two possibilities, as Justice Kagan put it so well. You lose or you quit. Millett And the issue is, and I hate to call it the lose prong, but when did he lose? When did the State say, we're done and we've decided this case is over, this appeal is over, and that was when the mandate issues? It's only about when that prong happens. And the time didn't happen. Ginsburg So you would have a difference between 2255 and 2254, and on the State level, you would have a variety of times, because some States, they don't all make it the mandate, they don't set finality at the mandate. There may be different periods of time before the mandate issues, so you would have various time periods for State prisoners, but if you were a Federal prisoner, then you would have, it would only be the one. Millett No, you have the exact same test. The answer is easier in the Federal system, because when direct review is concluded, this Court said in Clay, look, if all we had to look at was conclusion of direct review, it didn't say we didn't know it, we don't, there would be no conclusion to the mandate. Ginsburg I'm not talking about tests. I'm talking about time periods. There's a uniform time period for 2255 petitions. There would not be a uniform time period for 2254 petitions. Millett That's a result, but that's already a result of Jimenez, which had this whole reopening process, that unless the Federal system were to do that, as this Court noted in Wall v. Coley, you can have discretionary applications that can be called direct review as well. Direct review is not the linear process that is tried to be portrayed here, and the time ultimately is the same. What happened in Clay, these things are equivalent. You have the same test. Sometimes the outcome is different based on what the individual does and what the State law allows, but you have, this is supposed to protect Federalism, and the only way to protect Federalism and comity interests is to respect when the State says it's done, to have the Federal law tell them you're done, and to start the statute of limitations ruling when State law is saying we're not done, the appeal continues and do not start your State post-conviction relief, is to put Federal law at loggerheads with the State law it's supposed to be respecting. I would like to reserve the balance of my time. Sotomayor, where is 2244d-1? I looked in your brief. 2244d-1 is attached to the appendix. To the petition for cert. Petition for cert. Why isn't it in your brief? I mean, it's what your brief's about. Why isn't it in the appendix to your brief? It's also not in the appendix to the government's brief. It's also not in the appendix to the State's brief. I have to go back to the petition to get it? I mean, it's what we're talking about here. I don't understand why the text is not in your brief. I apologize for the inconvenience. Thank you, counsel. Mr. Mitchell. Mr. Chief Justice, and may it please the Court. The Fifth Circuit lacked jurisdiction to review the district court's dismissal of Mr. Gonzales' habeas petition because the document issued by the circuit judge in this case fails to qualify as the required certificate of appealability under 2253c-1. Justice Kagan asked my opponent how one should determine whether a document counts as a certificate of appealability. The answer is found in section 2253c-3. A certificate of appealability under paragraph 1 shall indicate which specific issue or issues satisfy the substantial showing requirement in paragraph c-2. Do you agree with your friend that the only fault here was on the part of the judge and not the Petitioner? We agree that the judge is at fault. The Petitioner did mention in his application for a COA his speedy trial claim. So I don't believe we can fault Mr. Gonzales for the way he applied for a COA. But at the same time, Mr. Chief Justice, Mr. Gonzales, if he had the opportunity to qualify for a COA under 2253, should have the opportunity to seek a new COA if this Court were to conclude that c-3 is not. Breyer, I mean, what are we arguing about? He should have filled in the blank and said it's a speedy trial act issue. And he didn't. The judge didn't. He should have done it. He didn't. So now I am a court of appeals judge. I get this. I say, oh, my God, he forgot to fill in the right number. I'll tell you what. I'll fill it in. And I'll sign my name. Is that legal? If the court of appeals judge does. I'm a judge in the court of appeals. I have the case here. I say, oh, my God, I've read the appendix. I don't always read appendices, but sometimes I do. And I notice that there's a blank here and it's supposed to say speedy trial act. So I get out my pen and I say speedy trial act, SB. I sign it. Okay? And now is everything okay? If he does that before the court of appeals issues its judgment, we believe that's permissible under the statute. Breyer. So what are we arguing about? Why not just say, look, this is like the Copyright Act registration requirement. I mean, it's not jurisdictional in the sense that the court has to look through all these appendices itself to see that everything is perfect. It's just something you should do. And if you didn't do it, then in an appropriate case, the judge can do it himself or waive it or whatever makes sense in the circumstance. What's wrong with that? The problem is in this case, the court of appeals did not do that. They entered judgment without the penalty. Suppose we say they entered judgment without it. We will assume, nunk pro tonk, they did it. Or what is the horrible thing about that? Mr. Gonzales can't qualify for a CLA under the standards this Court has set forth in Slack and Miller-El, because his speedy trial claim encounters an insurmountable procedural obstacle. This is precisely the type of case that 2253 and Slack and Miller-El are designed to keep out of the Federal appellate law. Scalia, Mr. Mitchell, do you think the court of appeals could do it, nunk pro tonk, without first making the determination that the trial judge was supposed to have made? A circuit judge can issue a CLA under the statute, so. But he would have to make the determination required by C1, no? He would have to make the determination, yes, as I understood the question. And that wouldn't necessarily point him just to the Speedy Trial Act. He would have to see what other constitutional claims are in the case, right? That's correct. And often the courts of appeals will have their own circuit rules that govern how litigants should seek certificates of appealability, and there may be a process that the litigant would have to invoke in order to do that. You're telling me this is a statute, the purpose of which was to speed things up, which was to help courts of appeals by eliminating draws while focusing on issues that really do have constitutional issues. Now, suddenly what's worrying me, and I don't have a definite answer, is if I adopt your interpretation that this is jurisdictional, I am somehow increasing the workload of the courts of appeals, because they will have to have staff people going through to see whether every I is dotted and every T crossed, and they did have all the right things there. And the pain of doing that is if you don't do it, then you have to do these things over again. It will be too late. People get in other arguments. But at the same time, many other appeals that should not have been taken will be cut off at the district courts. They should be. Sotomayor, are you accepting Justice Scalia's point that the certificate of appealability doesn't have to jurisdictionally describe the substantial constitutional issue? No, it must describe the constitutional issue. So you're disagreeing with the question he posed to your adversary, that you were saying that this was deficient because both it didn't indicate the issue and because it didn't describe the substantial constitutional question? Our contention is that a certificate of appealability must indicate a specific constitutional claim under C-3 to qualify as a certificate of appealability under C-1. And, General Mitchell, but you say that C-2 is not jurisdictional. Is that correct? You say C-1 and C-3 are, but C-2 is not? And if that's right, why? C-2 is phrased differently from C-3. C-3 describes the essential content of what a certificate of appealability must contain. C-2, by contrast, simply says that a certificate of appealability may issue under paragraph 1 only if the applicant has made a substantial showing of the denial of a constitutional right. It's defining the conditions under which a COA may issue. A wrongly issued COA is not necessarily one that is patently defective so that it no longer holds the title of certificate of appealability. But C-3 says, shall indicate which specific issues satisfy the showing required by C-2. It just seems as if all of these are a little bit of a piece, and, you know, you can stop it at 1 or you can go on to 2 and 3, but it seems to me sort of hard to make the jump here and leave 2 out of it. Well, perhaps an analogy from other areas of appellate jurisdiction, sometimes the district court may issue a final judgment for the wrong party. Perhaps he enters summary judgment and he shouldn't. That final judgment may be erroneous, it may be wrongly issued, but it doesn't mean it deprives the appellate court of jurisdiction to review what the district court did. Ginsburg. Can we back up and tell me why, which statute are we dealing with, 2253, why that's a federal petition by a State prisoner, and 2255 is a petition by a Federal prisoner? So those are the class of cases. The class of cases are habeas cases, 54 State prisoners, 55 Federal prisoners. 2253, it seems to me, is a processing rule that applies to both categories. It applies to 54 and it applies to 55, but the classes of cases are identified in 54 and 55. So I would rank 2253 as a mandatory processing rule, but not a rule that tells us what class of cases the Court is competent to hear. Well, 2253a reads as though it's a grant of appellate jurisdiction. It says that in either the habeas corpus proceeding or in a 2255, the final order shall be subject to review on appeal by the court of appeals. It doesn't mention the word jurisdiction, but it's phrased in a way that is seems as though it's conferring appellate jurisdiction in cases where a habeas petition or a 2255 motion proceeds to finality. So there's a double, there's 2254 is jurisdictional, 2255, and then 2253, which tells how you are to proceed under either one of those, is not simply a mandatory how you do it, but jurisdictional. All right. 2253a is the provision that establishes appellate jurisdiction in habeas cases. And then subsections B and C narrow that jurisdictional grant and define the conditions under which a litigant cannot take an appeal and in which cases the courts of appeals cannot exercise appellate jurisdiction. This Court also has held in Miller-El that the issuance of a certificate of appealability is a jurisdictional prerequisite to an appeal, and in holding that, it relied on a long history of treating both the COA and the earlier certificate of probable cause. Ginsburg. The feature of this case that I think is very unsettling is there is an issue for the court of appeals to decide. It's the timeliness issue. The court of appeals could not decide the speedy trial. I mean, if this case were to fail because the trial judge didn't identify the speedy trial issue, when the court of appeals in no way could reach that issue in this case, isn't that something only a distinction only a lawyer could know? Well, we view the purpose of 2253C as keeping cases out of the courts of appeals when habeas Petitioners have no chance of obtaining ultimate habeas relief. It's designed to keep out petitions that may present interesting statute of limitations. Ginsburg. But if you say that, then here's Judge Garza, and he says, yes, there's a statute of limitations question here. It has to be decided before we get to the speedy trial. But if the judge felt that the speedy trial issue was not meritorious, then why would he grant a certificate of appealability on the threshold question that you have to decide before? Because it seems to me it would be a waste of everyone's time if the judge thought that the speedy trial issue had no merit. He can't grant the CLA under Slack. If the constitutional claim has no merit, then he can't grant the CLA under Slack. But presume, General Mischel, that he thinks that it does, but he just forgot to write down speedy trial. And the question is why that forgetting to write down speedy trial should make a difference here, given that, as Justice Ginsburg said, in any event, the court of appeals couldn't reach it because of the procedural issue that it had to reach first. Well, the first problem is the speedy trial claim in this case encounters a procedural bar. If we put that to one side and assume that this were a case where he had a substantial constitutional claim and the circuit judge simply forgot to write it down, the statute requires that the constitutional claim has to be indicated in writing in the certificate. That serves the purpose. Sotomayor, I'm a little confused, okay? And I think it's what Justice Ginsburg was trying to get at, and Justice Breyer, which is what you are requiring and you're saying the statute requires, if it's for the district court to always reach the merits of any argument presented in a habeas petition, to figure out whether it's a substantial argument before it dismisses on a procedural ground. And that seems to be what you're wanting to happen. And I think that's what you're trying to happen, because a judge would have to say I'm dismissing on a procedural ground, and I believe that the claim is more than non-frivolous, that it has a substantial basis. How does that speed the habeas process in the normal cases? I mean, in my experience, what district court judges do is find the easiest way to reach the speedy trial ground, and if the speedy trial ground is the easiest, they go that way. I'm sorry. If it's not and it's a procedural bar, they use the procedural bar. They don't create extra work for themselves. He doesn't have to decide the merits of the speedy trial claim. He just needs to take a peek at the constitutional claim and see if it has some chance of being substantial. And if it encounters a procedural bar, as it does in this case, because Mr. Gonzales never sought direct review in the Texas Court of Criminal Appeals. Sotomayor, maybe it's a good time. You're a good bit more than halfway through your argument. Maybe it's a good time to switch to the merits. Yes, thanks. On the statute of limitations question, this case turns on the meaning of section 2244d1a, which first establishes the date on which the conviction, the judgment became final as a potential starting point for the 1-year limitations period, and then establishes two prongs for determining when that date of finality occurs. Finality under the statute can occur either at the conclusion of direct review or it can occur at the expiration of time for seeking such review. And the Fifth Circuit correctly held that the conclusion of direct review prong applies only when the habeas applicant pursues direct review to its natural conclusion by obtaining either a judgment or a denial of certiorari from the Supreme Court of the United States. The expiration of time prong should govern all other cases, those in which the habeas applicant allows the time for seeking direct review to expire before reaching this Court. General, it seems to me that Ms. Millett's best argument is an argument just about the oddity of what would happen if we adopt your construction of the statute, which is that the time begins to run before a habeas Petitioner actually can file a State habeas Petition. And whether that's so odd as to make this a wrong way to construe the statute. In some cases that will happen. There will be habeas Petitioners who have concluded their direct review process, or they've, in this case, they've allowed the time to expire, but the statute of limitations will start running for Federal habeas, yet they won't be able to quite yet go to State court. But the other thing is that in this very case that was so, right? Because the period for discretionary review expired in August. Yes. And the mandate issued on September, some date in September, so there could be no State habeas until the mandate issue. So the days in between would count against the defendant on the speedy trial clock, even though he could not have filed his State habeas. He could not have stopped the clock by filing a State habeas. That's correct. And it's only a 45-day window or so in this particular case, and in most cases it should only be a few weeks or months. No one's going to lose their entire 1-year clock waiting for their ability to seek State post-conviction review to begin. Sotomayor, What happens if it happens? Well, if that were to happen, then the prisoner should file a protective habeas petition under Rines v. Weber. He should file it in Federal district court and then ask the district judge to use the stay-in-abeyance procedure that this Court approved in Rines, and then wait for his opportunity to seek State post-conviction review and return to Federal court. Sotomayor, Does that make any sense? Isn't it easier to read the statute the way your adversary suggests, which would protect both the right to direct review and the right to collateral review? Well, the Fifth Circuit has had this regime now for almost 8 years, since Roberts was decided. And as far as we know, no habeas petitioner has had to file a protective habeas petition. And even if it occasionally will happen, it's not much different than what we currently deal with on mixed petitions, when a habeas petitioner needs to use the stay-in-abeyance mechanism in Rines. One other point back on jurisdiction. It's important that we emphasize, we asked for this Court to vacate and remand with instructions to dismiss the appeal. But the only reason we requested a dismissal of the appeal is because Mr. Gonzales should not get a certificate of appealability under the standards of Slack and Miller L. If there are other habeas applicants who are victims of C-3 errors committed by circuit judges, and that error is discovered later in the appellate process, the proper remedy should be normally to allow that habeas applicant to seek a new certificate of appealability. Breyer, I mean, you can read the statute differently. You can say, I'm now the court of appeals judge, I look at it, lo and behold, there are two blanks. But on the basis of what I've read in the briefs and the record, I can say that the appellant has made a substantial showing of a denial of a constitutional right. I know the record, and he has these things there, and also I know what they are. Okay? So I fill in the blanks. So the chief judge of the circuit fills in the blanks with the panel's approval. Now, the only reason for doing that is that it saves everybody a lot of time. And that it costs nobody anything. So why not, since the language permits it, do that? Because it would also – your Honor's proposal would allow habeas applicants such as Mr. Gonzalez to take appeals when the statute precludes them from taking them. But you're giving the conclusion. I've just said the statute doesn't. They can take the appeal, and they're not going to get anywhere because of this error of the lower court judge, unless the court of appeals, having looked at the record a little bit, discovers that there is a substantial constitutional question and they know what it is, and then they fill in the blanks. And the language allows that, I believe. And the purpose would allow it, for after all, the purpose is to be more efficient, not less efficient. And I can't think of any harm that's done reading it that way. So you tell me what is the harm that's done. Several harms. One of the functions of 2253c is to protect the habeas applicants who have substantial constitutional claims and avoid their habeas petitions from being crowded out in a sea of meritless petitions, all of which can go up on appeal. No, no, they can't, because I'd have to be able to fill in those blanks or goodbye. So it doesn't get any meritless ones up there. The only ones that come up are merited. Well, it would have to be both merited and also not encounter an insurmountable procedural obstacle, which is the problem that plagues Mr. McConnell. No, if there is an insurmountable obstacle, although, as in this case perhaps, we don't reach the constitutional issue, there is one there, so it is appealable, but we say we do not reach it because there is this impossible procedural obstacle that here blocks it. There we have a system that seems more efficient and seems what is being argued. And all we have to do is say this is not a jurisdictional requirement in 2 or 3, and there we are. What's wrong with it? Well, if States are allowed to waive C-3, it will open opportunities for gamesmanship. For example, if States lawyers could decide whether to invoke C-3 based on the strength of opposing counsel. I see my time has expired. Thank you. Roberts. You want to finish your sentence? We ask the Court to vacate and remand or any alternative to affirm. Thank you. That's a different sentence. It was an impass. Ms. O'Connell. Do you have any idea of how much the jurisdictional question plagues the courts below? Meaning is it so complicated that people below don't really know what district courts are granting COAs on? And do circuit courts don't understand what the issues are somehow by the opinion below? No, I think that the court of appeals in this case understood exactly what the issue was. In footnote 1 of its opinion, it said the Petitioner has briefed these four other – these four constitutional claims in addition to the procedural claim that was in the Certificate of Appealability. A COA was not granted on any of those issues, so we don't have jurisdiction to consider them. Nobody has made a determination in this case that there is a single constitutional issue that could potentially warrant habeas relief for Petitioner. I don't think it's a matter of the courts being confused. It's a matter of what the statute is trying to do is getting everybody to focus up front on why this case should go forward in the court of appeals. Ginsburg. So if someone in the court of appeals noticed that, yes, the certificate pinpoints the only question that the panel could decide at this juncture, but there is a lurking constitutional question, then isn't 28 U.S.C. 1653 exactly what the panel would do? That is, 1653 says that defective jurisdictional allegations can be amended in the trial or the appellate court. And so all that would have had to have happened is very much in line with Justice Breyer's questions, is the judge on the panel said, oh, the certificate of appealability didn't mention the speedy trial issue, so counsel, would you like to amend, or we on our own will amend to put that question in? That could certainly happen. There should be a presumption. If the court of appeals amended the certificate of appealability, an appeal could go forward on that issue. That didn't happen in this case. Ginsburg. Well, the appeal couldn't go forward on that issue because that issue hasn't been decided below. That's the one thing we know is the speedy trial issue, the case cannot go forward on the speedy trial issue. Isn't that right? Justice Ginsburg, I don't — first of all, I don't think that's right. I think that just because the district court kicked this case out on a procedural issue doesn't mean that the court of appeals couldn't reach the substantive issue if it reversed the procedural issue. How common is it for courts of appeals to reach substantive issues in the first instance when there's no decision of the district court? It certainly could send it back, but if that issue was briefed and if it was briefed again in the court of appeals, the court of appeals certainly could decide it. There's no bar to the court of appeals deciding it. Wouldn't the most sensible procedure be, let's forget the intricacies of 2244 and 253, but you have a case where there's a statute of limitations question, and that has come up for review. Wouldn't the court of appeals, 99 out of 100 times, say, now the substantive — since we've decided that the case is timely, then it's the district court's function to resolve the substantive issue? Even if the court of appeals would normally do that, this Court said in Slack that if the court of appeal — or if the district court kicks the case out on a procedural ground, the certificate of appealability has to indicate at least that the procedural issue is debatable and also that a constitutional issue in the case is debatable. Nobody has ever made that determination in this case. If a court of appeals judge would have noticed it and reissued a new certificate that certified that constitutional question, that would be fine and the case could go forward. But at this point, if a court of appeals judge can do that, can we do that? This Court could do that. Section 2253c1 gives circuit justices the authority to issue amended certificates of appealability. You read that to be any circuit justice or only the circuit justice from the circuit in which the case comes from? Well, the Court has procedures in place where, like, an application for a certificate of appealability would normally go to the circuit justice and then I suppose could be referred to the court. So if I say that. Well, but this Court's procedures indicate that. I think that under the statute, sure, any circuit justice could issue a certificate of appealability. That might be. Circuit judge or circuit judge or judge. A circuit justice or judge. Right. So I could just sign this tomorrow and that would moot this case and get rid of it. I don't think so. No, because Justice Breyer is not the circuit justice for the Fifth Circuit. Under this Court's procedures, the application, I think, would have to go to Justice Scalia and then go. So there. However, even if this Court were to issue a certificate of appealability, if the Court determined that there was actually a debatable constitutional issue in this case, which no Federal judge has done to this point, I don't think that it could still reach the procedural issue that's presented in the second question. The court of appeals didn't have jurisdiction to issue a decision on that question. So the only remedy would be for this Court to vacate that opinion and either send it back with an order to dismiss if it didn't think there was a debatable constitutional issue, or let the court of appeals reissue its opinion or re-decide the case how it wants to. I don't think the Court should issue a certificate of appealability in this case. Because it has to go back anyway, it makes more sense to let the court of appeals tell us if what they thought is that there was a debatable constitutional issue here on the speedy trial claim. It's not clear at all that they did think that. Footnote 1 of their opinion says they briefed, the Petitioner briefed the speedy trial claim but we don't have jurisdiction to consider it. It indicated that they didn't think that the speedy trial claim was implicitly included in the certificate of appealability. Kagan Ms. O'Connell, could I just clarify your argument? You disagree with the State of Texas, isn't that right, because you think C1, C2 and C3 are all jurisdictional, is that correct? That's right. So, I mean, C2 is, I mean, it appears to make a substantive inquiry jurisdictional that in any case a court is going to have to make this, is going to have to ask itself whether a substantial showing of the denial of a constitutional right has been made. And that would seem to be a very odd thing to do for jurisdictional purposes. I don't think it is, Justice Kagan. It's no different than under Section 1331. A court would have to take a peek at the merits to see if there is a Federal question in the case before letting it move forward. It's just looking at what the class of cases is that Section 22. Kagan But in most cases the Federal question inquiry is just, look, I'm looking at your complaint. Do you cite a Federal statute? Do you cite a Federal constitutional provision? If so, there's a Federal question in the case. What C2 says is have you made a substantial showing of the denial of a constitutional right? That's a very different inquiry. It is. And once a judge issues a certificate of appealability on that question, it should be presumed that it's been satisfied. What we're saying when we say that C2 is jurisdictional is that if it becomes a jurisdictional rule, but we're going to presume that it's been satisfied, that's a sort of odd thing to do for jurisdictional rules, right? Jurisdictional rules, we have to look at them and we have to be serious about them. Yes. But if a district judge or a court of appeals judge has made a determination that there's a constitutional issue that's debatable going forward, that seems to be something that would be extremely hard to overturn. So if the panel looks at the merits of the constitutional issue as to which there is a reference in the certificate of appealability, when it decides, when it writes its opinion, it first has to ask itself, was there a substantial showing? And if there wasn't, then it will say we'll dismiss this claim. And then, but if it says, well, there was a substantial showing, but it's wrong, then we'll affirm. Is that right? I mean, I think that could happen. In most cases, it's not going to be an issue. If somebody is certified that it's debatable, then somebody has made that showing. If it turns out, like, for example, if there was, if the Petitioner had said, my right to testify at trial was violated, they wouldn't let me testify, and then that issue is certified, and then it turns out when it gets to the merits panel that he did, in fact, testify and it was a totally frivolous claim, yes, I think that the court of appeals should dismiss the case at that point for lack of jurisdiction. Then let's go on to C-3, because C-3 seems to be just a documentation requirement. In other words, let's presume that C-2 has been satisfied. There was a substantial showing made, and there's a documentation error under C-3. Why should that be jurisdictional? A sort of, you know, there's been a substantial showing made, there's a documentation error, it's an error that the habeas Petitioner has absolutely no control over. Why should we view that as a jurisdictional bar? Justice Kagan, I think it's because we don't actually know that a substantial showing has been made until a Federal judge tells us that. We could, you know, you could assume that a substantial showing was made. It's not clear that Judge Garza thought that or that any judge on the court of appeals thought that. Thank you, counsel. Ms. Millett, you have three minutes remaining. Thank you, Mr. Chief Justice. Justice Kagan, the question is whether State prisoners now should be worse off than Federal prisoners. It's not some prisoners that will fall in this gap. It is 99 plus percent of prisoners, because in Texas, in Texas, only about 1% filed discretionary petitions for review. Far less than that, 99.7, 99.8% do not seek cert on direct review from this court. So we're now in some backwards world where Clay is going to drive the rule for Federal prisoners, is going to drive the statute of goodness. Kagan I don't understand that, Ms. Millett. I mean, the situation in this case is presented because the Petitioner here didn't seek review in the highest State court. The situation is not presented because the Petitioner did not file cert petition. Millett Well, the question is what one means by the so-called natural conclusion of direct review. Now, statistically, this is a statutory provision written for State prisoners by Congress to address State prisoners. And if the natural thing that happens in the world is 99% do not even seek review in the State's highest court, and I'm extrapolating from Texas, I don't know all 50 States, but I have no reason to think that's anomalous, 99% don't file petitions for discretionary review, what kind, why would Congress have written this statute in a way that's going to create a gap that is going to cause prisoners who wouldn't otherwise file to now file instead of 2,000, they're not going to have 102,000 petitions for discretionary review in the Texas courts to stop them. Kagan I'm not sure I understand you. You're saying 99% don't file petitions in Texas's highest court? Millett Correct. Correct. And this is the Texas judicial reports are available online that record this. I'm looking at the number of petitions each year. Roughly the last three years in the 2,000-ish range, convictions in this State more than 100,000 or so. Alito But you're saying 99% of the defendants who take an appeal through the Texas system don't file a petition with the Texas Court of Criminal Appeals, or is it 99% of those who don't do that and then file a Federal habeas petition? I would imagine it's the former. Millett I'm talking about the former, but the point, the point is that the argument is what's in the habeas review, these Petitioners are not going to be in good shape, right? They're going to have their claims unexhausted or defaulted. Millett They may or may not, as we pointed out in the McKinsey case, the Texas Court of Appeal, the Texas courts have actually entertained a speedy trial claim that in the, at both levels it was raised on direct review and then it wasn't, but it was also, they've raised it in both forms, so cast some doubt on the procedural default argument advanced here. But you're right, of course, there are issues here, but the question is whether Congress wanted a gap. In Johnson v. United States, this Court construed 2255s, I think it was subsection 4 there, the one on, if a conviction is overturned, it was used to enhance, then when do you, what is the timing to come back and file a habeas claim to change your sentence that relied on a now vacated prior conviction. And this Court said we're not going to construe this language to create a gap between when the time, when the finality attaches and when the time that you can actually file for post-conviction review commences. The whole point of this, of 2244, was to respect State processes. It's not another exhaustion requirement. It's respect the State. And Texas couldn't be clearer. In ex parte Johnson footnote 2, it says the appeal continues. Sorry, may I finish the sentence? The appeal continues until the mandate issues Federal law shouldn't change that. Roberts. I just have a question. I don't understand the 99 percent figure. That includes people who entered a plea bargain and presumably gave up the right  It's 99 percent of the way of the way of the way of the way of the way of the way of the way of the way of the way of the way of the way of the way of the way of the way  plea bargains. Those people obviously didn't appeal. Some of them, Mr. him in a, is what's a plea bargain. Some of them do. Okay. Thank you, Counsel. Counsel, the case is submitted. 1